## ATCHISON, T. & S. F. RY. CO. et al. v. FERRYBOATMEN'S UNION OF CALIFORNIA.

Circuit Court of Appeals, Ninth Circuit.
August 20, 1928.

No. 5432.

E. W. Camp and E. T. Lucey, both of Los Angeles, Cal., and W. H. Orrick, F. M. Angellotti, Guy V. Shoup and Henley C. Booth, all of San Francisco, Cal., for appellants.

John L. McNab, Raymond Benjamin, S. Hasket Derby, Joseph C. Sharp, and Derby, Sharp, Quinby & Tweedt, all of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Ferryboatmen's Union of California, which embraces most of the employés classified as firemen, deck hands, watchmen and matrons of the carriers, appellants, under an agreement with relation to hours of service, working conditions, etc., made certain demands for increases in pay and changes in working conditions. As a result an agreement of arbitration was voluntarily entered into in January, 1927, between the carriers and the union, as contemplated under the Act of May 20, 1926 (44 Stat. p. 577 [45 USCA § 151 et seq.]).

A better understanding is had by explaining that at the time of the arbitration and theretofore the employés of the carriers who are members of assigned crews were divided into two classes; one, working on the basis of 12 hours on watch and then 24 hours off duty, without pay for time off, and the other, working on the basis of 8 hours or less each day for 6 consecutive days. Both were subject to the applicable exceptions in rule 6, included in the arbitration agreement. That rule, with ten exceptions, reads:

"Rule 6—Hours of Service.

"Assigned crews, except as hereinafter provided, will work either on basis of:

"(a) Twelve (12) hours on watch, then twenty-four (24) hours off watch, without pay for time off; or

"(b) eight (8) hours or less on watch each day for six (6) consecutive days.

"Exceptions.

"1. On boats with two crews, watches may be separated by an interval of time.

"2. Extra crews may be used on any day it is found necessary to operate one or two crewed boats beyond assigned hours of regular crews.

"3. On basis of section (a) of this rule, length of watches may be varied as necessary to arrange relief, but must average eight (8) hours per calendar day in any cycle of three weeks.

"4. Where two crews are used, watches may be as long as eight hours and forty minutes, provided the combined watches do not exceed sixteen hours, and no crews work over forty-eight hours in six consecutive days.

"5. On boats operating out of Vallejo Junction, one crew will be used each day. Employés will work twelve hour watches for two days, with the third day off, without pay for time off and repeat.

"6. On tugs towing car floats crews working on basis of section (b) of this rule may be worked not to exceed nine hours and twenty minutes per watch. Crews on basis of section (a) of this rule will be given one watch off per month. Such watch to be designated by the railroad.

"7. On fire boats, crews will work twenty-four hours on and then twenty-four hours off without pay for time off.

"8. Limit anywhere provided on length of watches does not apply in emergency or when necessary to make extra trips to handle heavy volume of traffic which cannot be handled on schedule trips.

"9. Watches on three crewed boats shall not begin or terminate between one (1) a. m. and six (6) a. m.

"10. Employés required to operate boat to and from yard shall be paid regular run rates."

The specific questions submitted to the arbitrators pertaining to rule 6 were:

"(a) Shall the rule remain as written; or,

"(b) Shall the portion of the rule down to the word 'Exceptions' be changed so as to read: 'Assigned crews will work on the basis of eight (8) hours or less on watch each day for six consecutive days;' and

"(c) If rule is changed as under (b) hereof, whether, and, if so, to what extent, the exceptions shall be changed?"

After an extended hearing the matter was submitted to the board, which thereafter filed its award and decision, stating that, "after full and careful consideration of the evidence submitted, we do award and decide as follows regarding the specified differences." Then follows rule 6:

"Rule 6—Hours of Service.

"Assigned crews will work on the basis of eight (8) hours or less on watch each day for six (6) consecutive days."

Twelve exceptions follow, Nos. 1, 2, 4, 9, 10 and 11 of which are included in the exceptions heretofore quoted. New exceptions are as follows:

"3. Where three crews are used, watches may be as long as eight (8) hours and forty (40) minutes: Provided the combined watches do not exceed twenty-four (24) hours and no crew works over forty-eight (48) hours in six (6) consecutive days."

"5. On boats operating out of Vallejo Junction, crews may be assigned twelve (12) hours per day and not to exceed forty-eight (48) hours per week.

"6. On one and two crewed tugs towing car floats, crews may be worked not to exceed nine (9) hours and twenty (20) minutes per watch.

"7. On three-crewed tugs towing car floats and car ferries, except on Carquinez Straits, crews may be assigned twelve (12) hours on watch with twenty-four (24) hours off watch: Provided such assigned watches average forty-eight (48) hours per week within the time required to bring it about.

"8. On fire boats, crews will work twenty-four (24) hours on and then twenty-four hours off, without pay for time off."

"12. Night watchmen may be assigned on twelve (12) hour watches four (4) days per week."

In brief, the decision of the board extended the eight-hour day to all assigned crews on watch each day for six consecutive days.

By the impeachment the validity of the award is challenged on the ground that the board held that it lacked jurisdiction to consider certain evidence introduced by the carriers in respect to exceptions under modification of rule 6 pertinent to then existing eight hour positions, as well as to 12-hour positions changed to 8-hour positions.

It appears by the record that in the course of proceedings the carriers introduced certain proposals by way of exceptions to rule 6, and requested the board to rule as to its jurisdiction to make decisions and an award respecting that rule. In arguing upon the request, the measure of the authority of the board under the agreement was fully discussed by both sides. The representative of the employés took the position that the board had no authority to change any exceptions to become applicable to positions under the 8-hour provisions of rule 6. The result was that the carriers' proposals were offered, with the qualification that if, upon consideration, the board should be of the opinion that under the agreement it had authority to and should, concurrently with changes as requested by the union, make changes in certain exceptions, then the proposals were to be considered together with the evidence pertinent thereto.

The board took under advisement the carriers' request for a ruling and the employés' objections thereto, and proceeded to hear

voluminous testimony introduced by the carriers bearing upon the working hours, schedules, overtime, wages, and other matters within the general scope of the rule and the proposed exceptions to rule 6. Thereafter, and while the request of the carriers for the ruling heretofore referred to was under advisement, the union, through its representatives, in a communication to the board, referred to the written request of the carriers for a ruling as to the jurisdiction of the board under the terms of the agreement, and joined in a request for specific rulings on each of the proposals of the carriers. The board reserved its ruling until after the trial was ended, when, several days before the award and decision were filed, it made and served upon both parties the following ruling in writing: "The board has considered the request by the carriers that it define its understanding of its powers under sections of the arbitration agreement relating to rule 6;" and, after setting forth the specific questions submitted in the request, continued: "It has also considered arguments and objections of the union. The board is of the opinion that, if it changes rule 6, as under (b) above, it may by its award change the exceptions in said rule, but that such changed exceptions will not apply to positions now on the 8-hour basis, which positions shall remain subject to the present exceptions applicable to 8-hour watches."

We disagree with the carriers' argument that the ruling constituted the expression of an opinion of the board that it had no power to grant or deny changes in rule 6, which would become applicable to persons then working on the 8-hour basis. The ruling should be regarded as wholly separate from the decision and award of the board. It might well have been announced during the presentation of the evidence; but the mere fact that it was reserved until after all the evidence was in did not change its character as simply that of a ruling upon one of the several questions presented during the hearing or trial. No decision of the controversy itself was made until the formal document entitled "Award and Decision" was filed. There is no specific language negativing power to consider the testimony introduced and to decide the points urged by the carriers.

The more reasonable interpretation of the memorandum ruling is that the board could by award change rule 6 and the exceptions thereto, but that it would not change then existing exceptions, so as to make them applicable to positions which at the time of the decision were on the 8-hour basis, and that as to those positions the exceptions relating to 8-hour watches under the 8-hour rule would still obtain. That such is the true view is borne out by the language of the award and decision wherein the board, answering the question whether or not there should be changes in the hours of service (which involved the question whether there should be an abolition of the 12-hour watch provision, by making all assigned crews work on the basis of 8 hours or less on watch each day for 6 consecutive days), decided to put all assigned crews on the 8-hour basis, and made a new rule in accord with such decision, and adopted 12 exceptions pertaining to hours of service, which would supersede the 10 exceptions that had been in force with respect to such service under old rule 6, subject, however, to the qualification that those persons who before the decision and award had been under the 12-hour rule, and who by the decision were brought generally under the 8-hour rule, were to remain subject to the old exceptions so far as they might be applicable.

This latter class comprises the only persons materially affected by the decision, for the exceptions under the new rule 6 seem to make unimportant practical changes in exceptions governing the positions of those who had previously been on the eight hour basis. That, however, is not a matter of moment to the present appeal before the court. The determining ground is that the board had before it voluminous evidence introduced by the parties upon the merits of the controversy. Having decided that under the agreement it had authority to change rule 6, and the exceptions referable to the positions which would be affected by that rule, and having considered all the evidence submitted, and after full consideration thereof, having reached a conclusion, the award, by section 9 of the act (45 USCA § 159), became conclusive upon the merits and facts.

The decision of the District Court is therefore affirmed.