FERRYBOATMEN'S UNION OF CALIFORNIA et al. v. NORTHWESTERN PAC. R. CO. et al.*

SAME v. SOUTHERN PAC. CO.

SAME v. NORTHWESTERN PAC. R. CO.

No. 8117.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1936.

*Rehearing denied Aug. 18, 1936.

WILBUR, Circuit Judge, dissenting.

———◆———

Derby, Sharp, Quinby & Tweedt, S. Hasket Derby, and Joseph C. Sharp, all of San Francisco, Cal., for appellants.

Henley C. Booth and A. A. Jones, both of San Francisco, Cal., for appellees.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decree rendered in a proceeding in equity for an accounting and a recovery of overtime wages claimed by the appellants to be due members of the crews of appellees' ferryboats, under an award in an arbitration held under the act of Congress known as the Railway Labor Act (45 U.S.C.A. § 151 et seq.). The award was contested by appellees in the District Court below in proceedings other than this suit prescribed by the act. Judgment finally establishing the award was rendered. Suit was brought within the statutory period for commencement of a suit on a judgment. The answers make no claim of laches or under the statute of limitation.

Though the recovery and accounting prayed for involved many crew members' claims for many months of employment, the appeal may be disposed of by the determination of two questions of law: The first is, whether in considering the accounting prayed for the District Court properly interpreted the terms of the award with reference to overtime payments; and the second, whether under the undisputed facts the seamen's indorsements on the checks given them by the appellees constituted an accord and satisfaction of their claims.

Appellees operate passenger and automobile ferryboats between one or another pairs of cities on the crowded thoroughfares of the port of San Francisco. Prior to the award, the crews subject to its terms had been employed on these ferryboats for 12-hour watches with 24 hours between each watch; that is to say, two 12-hour watches in each three successive days. The award determined that the men should not be required to serve such excessive time in an employment in such a crowded harbor with its many months of foggy weather. It limited the watches to 8 hours in any one day, and increased their monthly pay $10 per month in each of the classes of crew members parties to the award. The appellees paid their crews certain sums of money for wages which they claimed were for the amount due under the award. There was no dispute between the men and the companies that at least this amount was due them. The crew members indorsed and cashed the checks in forms long used by the appellees, under statements, later considered, to the effect that the indorsements were an acknowledgment of receipt in full of payment of the amounts stated on the checks to be for additional compensation under the award.

The crews later were advised that they were entitled to a greater sum under the

award than the amounts paid them, and brought this suit. The pertinent portions of the award are as follows:

"Hours of Service.
"Rule 6.
"Assigned crews will work on the basis of eight (8) hours or less on watch each day for six (6) consecutive days."

"Overtime.
"Rule 8.
"The monthly salary now paid the employees covered by this agreement shall cover the present recognized straight time assignment. All service hourage in excess of the present recognized straight time assignment shall be paid for in addition to the monthly salary at the prorate rate."

The first disputed question is whether overtime shall be paid crew members working 12 hours in a day in addition to the monthly salary referred to in rule 8. The appellees claim that the phrase "All service hourage in excess of the present recognized straight time assignment" does not mean in excess of an assignment of 8 hours per day provided in rule 6, but that it means in excess of 48 hours per week of total time.

"Mr. Sharp. [For seamen.] As a part of this formula, will you state whether the formula contemplated that before a 12- and 24-hour man should be entitled to any overtime he should give 48 hours' service in a week.

"Mr. Hancock. [For ferry owners.] That is correct."

■ Appellee's position is that the shipowner could assign a watch to a seaman of 2 hours on Monday; 14 hours on Tuesday; 4 hours on Wednesday; 16 hours on Thursday; 2 hours on Friday; and 10 hours on Saturday, and still owe him no overtime. Under the principle so invoked, what the ferryboat owners did was to require the men to serve on watches of 12 hours each, with 24 hours intervening between each watch, thus aggregating in 6 days 48 hours; that is to say, the owners required the men to render exactly the same services as they had rendered prior to the arbitration award and claim that the award for an 8-hour day as against the prior 12-hour day gave them no overtime.

Appellees took their chance that they could set aside the arbitration in continuing the 12-hour watches until its affirmance.

It is apparent that under a decision by us accepting the principle of interpretation now invoked by the appellees the 12-hour watch could be restored without the deterrent of the overtime.

We do not so construe the terms of the award. The phrase of rule 8 as established by the award, "present recognized straight time assignment," clearly means the time assigned per day, as stated in rule 6, as follows:
"Rule 6.
"Assigned crews will work on the basis of eight (8) hours or less on watch each day for six (6) consecutive days."

The whole meaning and purpose of the award would be frustrated if the 8-hour assignment per day of straight time were interpreted to mean any 48 hours per 6 days, distributed at the convenience of the employer.

This erroneous contention of the appellees was the basis of the companies' computation under which it paid the men the checks in question. It was accepted by the lower court as a proper basis of computation, and the court's decision resting on this erroneous interpretation of the agreement is in error.

■ With respect to the contention concerning the indorsement of the seamen payees of the checks as a "receipt of payment in full," the checks being given for services rendered entirely in the state of California and the seamen's indorsements being made there, and the checks cashed there, they must be construed under the laws of the state of California. The Supreme Court of that state, in Sierra & San Francisco Power Co. v. Universal Electric & Gas Co., 197 Cal. 376, 388, 241 P. 76, 81, states the law in that regard to be: "The discharge of claims by way of accord and satisfaction is dependent upon contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore, there must be (1) a proper subject-matter; (2) competent parties; (3) a consent or meeting of the minds of the parties; and (4) a consideration."

■ The indorsements of the seamen on the owners' checks lack the third and fourth criteria of the above statement of the California law. There was no consideration and no meeting of minds.

The amount stated on the face of the check was the amount which the company admitted was due. There was no dispute between the sailor and the company that this amount at least was due. Yet it is the payment of this amount both agree was due the sailor that must constitute the consideration for the claimed accord and satisfaction. There was here no detriment to the promisees, the shipowners, in paying what they admitted was due the seamen, and the essential consideration is hence plainly lacking. Whether or not there was a dispute as to further compensation does not make the undisputed amount paid a consideration for the release of the disputed addition.

During many years of employment of the seamen they had placed their signatures under similar provisions on the back of their pay checks. The testimony is uncontradicted that in every such case, where the seamen made claim for additional compensation, the claim had been taken under consideration by the companies, and any amount found underpaid was paid despite the indorsement. When we consider the intimate status of the seaman to his ship and the employing owner, it is apparent that, in view of this long-established practice of the parties to this status, the seamen's minds did not meet the minds of the shipowners when they signed under the usual statement on the back of the checks.

We find no merit in the contention of these shipowners in this attempt to defeat the claims of their seamen.

The accounting is a matter for the trial court, and should be conducted on an interpretation of the award which will give to the members of the crews overtime for any day's services for the hours in excess of any 8 hours in that day. Since the hourly overtime is the same as hourly straight time, it is only necessary to compute the straight-time hourly wage.

In computing overtime, the formula is that of rule 9 of the agreement controlling wages existing at the time of the arbitration as modified by the establishing of 8-hour watches. It reads as follows:

"Fixing Overtime Rate.
"Rule 9.
"To compute the hourly overtime rate divide 12 times the monthly salary by the present recognized straight time annual assignment.

"Note: Under above the hourly overtime rates, for employes working different assignments, will be arrived at in the following manner:

"(a) On 8 and 16 watches, divide 12 times the monthly salary by 2504.

"(b) On 12 and 24 watches, divide 12 times the monthly salary by 2920.

"(c) On 12 and 24 watches, with one watch off per month, divide 12 times the monthly salary by 2776."

Since the award abolished 12-hour watches and established 8-hour watches only, the computation of the overtime over 8 hours is that of formula (a). The divisor 2504 represents the 6-day week applied to an annual employment. Six-sevenths of 365 equals 312⅞ working days, in round figures 313, times 8 hours equals 2504.

Appellees on this appeal for the first time raise the question of laches. It was not pleaded below. No showing of loss of evidence or witnesses or any embarrassment to appellees has been made. On the contrary, the evidence is from the corporations' records of payments explained by the corporate employers then in charge of the wage payments. Hence this is a proper case to apply the analogy of the statute of limitation, within the time of which the suit was filed. Furthermore, without pleading laches, these seamen have been put to the expense of attorneys' and witness' fees and costs of a trial below occupying 174 pages of the record, and similar attorneys' fees and cost on the appeal. In a court of equity such conduct estops this late assertion of laches. With regard to interest on any amount of underpayment for working the men 12 hours a day, the companies have had the use of the money and the men have not. They are entitled to interest.

The District Court is ordered to proceed with the trial of the cause under the principles above determined.

Reversed.

WILBUR, Circuit Judge (dissenting).

The appellants contend that under rule 6, as amended by the arbitration, the men who worked on 12-hour assignments should be deemed to be working upon a straight 8-hour assignment (instead of 12), and, consequently, should have the full monthly wage for the 8 hours worked, and, in addition, an hourly wage for 4 of the 12

hours as overtime.[1] In short, if they worked 20 12-hour periods in a month, they were to have in addition to the monthly wage, payment for 80 hours, or 10 days.

The appellees contend that rule 6, as amended by arbitration, is not applicable to the situation which arose during the pendency of the arbitration proceedings and the appeal from the award, except where the men work for 8 hours per day for 6 successive days. It is agreed that men on 12–24 hour assignments did not work at any time for 6 successive days.[2] Consequently, the appellees contend that other portions of the agreement must be examined for the purpose of determining the contract rule applicable to the situation. They find in rule 2 a provision concerning broken assignments which they contend is applicable.[3] This rule, it

---

[1] The final judgment on the arbitration award states:

It appearing further that on May 19, 1928, the parties hereto entered into a stipulation which was filed herein on May 22, 1928. reading in part as follows:

"1. That the ten dollars ($10.00) per month increase made by said award is to be put into effect and paid beginning May 1, 1928, and is to remain in effect until April 1, 1929, and thereafter subject to the 30-day provision in the existing contracts between the Ferryboatmen's Union of California and the respective carriers, copies of which contracts are exhibits in this case and are on file in the records of this court.

"2. That the $10.00 per month increase is to be retroactively paid to January 1, 1927, payment of such retroactive increase is to be made to the employees in service during all or any part of the period from and including January 1, 1927, to and including April 30, 1928, as early as practicable, and not later than June 15, 1928

"3. That if the above entitled Circuit Court of Appeals affirms the decree confirming the award the retroactive date of the new watch rules which are a part of that award shall be advanced from November 1, 1927, to March 1, 1928.

"4. On the coming down of the remittitur or mandate from the Circuit Court of Appeals to the District Court the judgment of the District Court shall incorporate and confirm the terms of this stipulation irrespective of whether said Circuit Court of Appeals affirms or reverses the judgment and order of the District Court heretofore rendered herein."

Of this contract the appellants state in their brief:

"3. Pending the appeal, the parties entered into a stipulation that if the award was confirmed, abolition of 12-hour watches would be given a retroactive effect.

"4. It is the method of carrying out this retroactive agreement that created the present controversy. The men claim that they are entitled to overtime for the last four hours of each 12 hours worked."

[2] Appellants state their proposition in the brief as follows:

"One of the objections that the carriers are making to the method used by the Union is the emphasis on that part of the rule which says 'six consecutive days' and they point out that, as a matter of fact, these men did not work six consecutive days, but worked five days one week, five days the next week, four days the next week, and so on in rotation. The rule provides that the monthly salary shall be for the assigned time, and the testimony is without conflict that it was the company that made this assignment, and that was the full assignment made by the company. If the company chose to assign these particular men on a system of watches which in effect required the men to work only 21 watches instead of 25, 26 or 27 watches a month, that was the company's doing, not the men's doing. * * * So long as the men worked the assignments that the company gave them they were entitled to the monthly salary for the straight time, for the first eight hours of each watch. Having worked those assignments, they are, under the agreement, the judgment, the rule and the practice entitled to overtime for the last four hours of each watch."

[3] Rates of pay.

Rule 2. Passenger and car ferries and tugs towing car floats:

| | |
|---|---|
| Fireman, | $136.35 per month. |
| Deckhands, | 129.40 per month. |
| Cabin watchmen, | 129.40 per month. |
| Night watchmen, | 110.00 per month. |
| Matrons, | 75.00 per month. |

Fire Boats:

| | |
|---|---|
| Firemen, | $ 90.00 per month. |
| Deckhands, | 86.30 per month. |

Note: Employes working broken assignments will be paid in the following manner:

(a) On 8 and 16 watches, allow for number of days worked on basis of 12 times the monthly salary, divided by 313.

(b) On 12 and 24 watches, allow one and one-half days for each watch worked, on basis of 12 times the monthly salary divided by 365.

(c) On 12 and 24 watches, with one

will be observed, remains in the contract, which is modified only in so far as the rate of pay and the hours of service fixed by rule 6 were changed by the arbitration proceedings. The appellants' reply to this argument is that the employers were bound by their agreement to put the arbitration into effect immediately, and that, having failed to do so, and having assigned a portion of the men to work 12-24 hour shifts as theretofore, these crews should be deemed to be serving regular straight-time assignments within the meaning of rule 8, and, consequently, entitled to overtime under that rule. . Appellants claim that the fact that the assigned crews did not work 6 successive days as required by rule 6 should be ignored because the failure of the crews to work 6 successive days of 8 hours each was the fault of the employer. Appellants' whole case is predicated upon this proposition.

The employers contend that the award was suspended during the proceedings for the impeachment of the award in the District Court and in the Circuit Court of Appeals. The statute is silent as to the effect of the appeal upon the award. The agreement of the parties to put the award into immediate effect must be read in the light of the right of either party to appeal.[4] So far as this case is concerned, however, that question becomes academic, for the parties entered into an agreement during the appeal that the provisions of the award with relation to hours of labor should relate retroactively, not to November 1, 1927, the first day of the first month after the making of the award, but should relate to the 1st of March, 1928. This agreement was made May 19, 1928. (See footnote 1.) If we assume, as appellants contend, that the carrier violated its original agreement to put the hours of labor into effect on November 1, 1927, the agreement of May 19th validated that assignment (12 hours) at least up to the date of May 19, 1928, and

left in doubt only the wages that should be paid during that period. That question was also considered in the contract of May 19th, which provided that the salary increase should be effective from and after January 1, 1927. The increased payment was to be made to all employees who served between January 1, 1927, and April 30, 1928, payment to be made "not later than June 15, 1928." (See footnote 1.)

It is clear that this contract could not have contemplated that the (12-24 hour) employees should serve on the 8-16 hour basis after the effective date of the award, March 1, 1928, because 2½ months had elapsed under the old assignments at the time the agreement was made (May 19). It seems equally clear that it was the intent of the parties to this stipulation of May 19th that the men would continue to work on 12-hour shifts until the final decision in the case, subject, of course, to such salary adjustments as the contract and award provided.

It cannot justly be said under these circumstances that the award was ignored, for the employers contend that the award was suspended by the impeachment proceedings, and this view was acquiesced in by the employees who continued to work on the old assignments and who in effect agreed to continue so to do until the decision on appeal.

The appellants state that the appellees gambled upon the question as to whether or not the award as to hours of service would be affirmed, and that as a part of this gamble they neglected to secure 6 successive days' labor from the employees, and that, having lost the gamble, they should be correspondingly punished by paying for overtime, although the hours worked over what they would have worked on the 8-hour assignments have already been paid for, as appellees contend, in accordance with the terms of the award.[5] This is not the question involved. It is

watch off per month, allow one and one-half days for each watch worked, on basis of 12 times the monthly salary, divided by 347.

Above applies to employes, whose monthly assignment is broken as well as to relief employes and those in extra service.

4 The agreement to arbitrate contains the following clause:

"Eleventh: The award of the Board as to wages shall become effective as of January 1st, 1927, and as to rules shall be-

come effective on the first day of the month following the date on which the award is filed, and shall continue in force, both as to wages, and rules, for the period of one year from the effective date thereof, and thereafter subject to thirty (30) days' notice by or to the railroads."

5 Appellants state the matter thus in their brief:

"What the company was doing was gambling on the fact that it could upset the judgment of the District Court and continue to work the men on the former

a simple question of the interpretation of a contract as amended by the award. The features of the contract which were not submitted to arbitration could not have been changed by the arbitration and by the express agreement of the parties were continued in force. It is perfectly clear that the employees did not work on the kind of straight-time assignment fixed by the board of arbitration; that is, the 8–16 hour assignments on 6 successive days.

Rule 8 is relied upon as a basis of a charge for overtime. Rule 8 was not changed by the board of arbitrators. The only question submitted to them with reference to that rule was whether or not it should be amended by giving 50 per cent. additional for overtime. The board denied this claim of the employees, and that denial took the form of the approval of rule 8 as it then stood. Rule 8 as originally adopted by the parties did not recognize any overtime in a 12–24 hour assignment. Under that rule a 12–24 hour assignment included no overtime except that in addition to the 12 hours.

The assumption of the appellants is that, by the amendment of rule 6, rule 8 has a new and altogether different significance. This, however, violates the fundamental rule of construction; namely, that the provisions of the contract shall be construed as of the time of its adoption. In my judgment, there was no overtime within the meaning of rule 8 under a 12–24 hour assignment. The fact that rule 6 was changed did not make overtime where none theretofore existed. The appellants contend that, if this is a true construction of the situation, they were not entitled to the additional pay that the employers have already given in compliance with the award that having worked the straight time assignment of 12–24 hours, and, having received the full monthly wage, they are not entitled to any additional payment unless they are entitled to that payment in the form of overtime.[6] It is true that the employers might have taken this position, but the answer to it is plain. Some consideration must be given to the express agreement that the hours of labor should have retroactive effect. Such an agreement could have retroactive effect only in the adjustment of pay.

The men who worked 12-hour shifts worked 8 hours more per week than the men who worked 8-hour shifts. Clearly, it was intended that they should be paid for this additional time from and after the date fixed for enforcing the new rule concerning hours of labor (rule 6). If there were no provision in the contract controlling the question, it would be a fair basis to give the 12-hour men the same pay per hour as the 8-hour men had received per hour for the additional hours of service. This was done. While the employers contend that this was a fair interpretation of the award, they base their estimates not alone upon the contention of a fair result, but also upon the contention that the contract expressly provided for just such a condition if rightly construed in connection with the award. The rule they rely upon is that set out in rule 2 for broken assignments. That rule was originally adopted in the light of the agreement for two straight assignments, 8–16 and 12–24 hour watches (rule 6), and full-time service of either type of watch would not be a broken assignment. Thus neither rule 2 nor rule 8,

---

system of 20 or 21 watches a month. If the company chose to gamble that it could reverse the court's order, it cannot come with any good grace into court and say, 'Why, you are asking us to pay a full month's salary for only 21 watches, where the eight-hour men worked 25 or 26 watches for the same monthly salary.'

"In other words, the carriers argue that because they violated their agreement and compelled the men to work 12-hour watches, instead of eight-hour watches, the men should be deprived of the benefit of the rule making time in excess of eight hours overtime."

The decision on appeal, however, does not indicate that the award as to rule 6 was attacked on appeal. Atchison, T. & S. F. R. Co. v. Ferryboatmen's Union (C.C.A.) 28 F.(2d) 26.

[6] Appellants' reply brief states:

"We have gone into the alleged 'misstatement' not to show we properly stated the record, but to emphasize the fallacious theory underlying the carriers' whole case; that even though the judgment abolished 12-hour watches for the period in question yet they 'were entirely proper.'

"If so, that is the end of our case, and the carriers should not have paid us even the checks they did give us. But the judgment says as of March 1, 1928, there were only eight-hour watches, and if so, 12-hour watches could not have been 'entirely proper' and the men are entitled to overtime for the last four hours of each 12-hour watch."

if construed strictly with reference to the original purpose of the contract of 1925, would be applicable to the situation in hand. Reading the contract as an entirety as reformed by the arbitration proceedings, thus omitting the provision of rule 6 permitting 12–24 hour assignments, it is clear that the employees did not serve a straight-time assignment within the meaning of that term as used in the contract as modified, for the reason that they did not serve 6 consecutive days, but that period was broken by 24-hour periods when no labor was performed. The contract as amended recognized only two sorts of assignments, straight time and broken assignments.

With reference to broken assignments, it provides that the employees shall receive full compensation for all the time served based upon the monthly wage. We must either adopt this provision of the contract as applicable to the rights of the parties or hold that there was no agreement between the parties as to the wages which should be paid under the peculiar conditions that arose during the pendency of the arbitration proceedings as to the 12–24 hour shift, because under rules 6 and 8 the monthly wage applied to a straight-time assignment, where the amount of labor performed was 8 hours per day for 6 successive days. The monthly wage was not applicable to any lesser time except by application of the wage as agreed upon for broken assignments. In view of the fact that the parties had a written agreement which they believed covered the whole subject of their employment and wages, and which by their subsequent conduct they recognized as controlling as to their wages, and in view of the fact that this case is brought upon the theory that the contract expressly regulated the wages, and for an amount claimed to be due under the contract, we agree with the parties that we must find the appropriate wage scale in the contract. The employers find that agreement in the provision in regard to the payment for broken assignments. It seems to me that this is a reasonable construction of the contract. The appellants admit that they do not bring themselves within the express terms of rules 6 and 8, but they attribute this failure to the wrongful conduct of the employers. This, I think, is a false quantity in the case. The employees worked, and it must be assumed that they worked voluntarily under the terms of the agreement. They are entitled to the pay provided in that agreement, and the only difficulty is in determining, under the complicated situation which has resulted by reason of the delays involved in the litigation, what the proper interpretation of the agreement may be.

Another consideration which in my judgment bears strongly upon the question involved is the fact that the arbitrators were not empowered by the agreement to consider the question of overtime in any way except to determine whether or not time and a half should be allowed for overtime. The board was not empowered by the parties to define overtime or in any way modify the definition of overtime, and, if the award (as to rule 9) be construed to make the last 4 hours of a 12-hour day overtime, it extends the award beyond the limitations of the agreement under which the award was made. This consideration merely leads to the conclusion, which is an ordinary rule of construction applicable to statutes, that those portions of the statutes re-enacted without change are deemed to speak, not from the time of re-enactment, but from the time of the original adoption. 36 Cyc. 1165, § 10.[7]

The law fixes the penalty for such delay in the form of interest which I agree with my associates would be applicable to any unpaid amounts due under the contract. They were liquidated.

I agree with my associates that there was no accord and satisfaction, for the reason that there was no clearly defined controversy prior to the payment of the supplemental amounts by the carrier. However, if there had been an accord, that is, an agreement to settle such a controversy, the payment by way of satisfaction of the accord would be upon a sufficient consideration. Accord and Satisfaction, 1 C.J. p. 131, § 7; p. 132, § 8; 1 C.J.S. p. 462, § 1; p. 466, § 2.

I think the judgment should be affirmed.

---

[7] "The original provisions appearing in the amended act are to be regarded as having been the law since they were first enacted and as still speaking from that time."