[Civ. No. 15733. Second Dist., Div. One. Nov. 19, 1947.]

MURRAY L. GIBBONS, Respondent, v. HOUSTON A. BREWSTER, Appellant.

Allard & Brownsberger, James G. Whyte and Maurice O'Connor for Appellant.

Nichols, Cooper & Hickson and A. L. Hickson for Respondent.

YORK, P. J.—Plaintiff instituted this action to recover a balance alleged to be due him from defendant on account of wages and salary as manager of the grocery department of the Market Spot, a market business owned by defendant. It is undisputed that plaintiff came to work for defendant in August of 1939, and became manager of the grocery department when the Market Spot opened on or about September 1, 1939, continuing as such until March 10, 1945. His basic salary was $30 per week until January, 1941, when it was raised to $35 per week. In addition to his salary, plaintiff received a bonus. From January 1, 1940, to the end of the third quarter of 1944 (with the exception of one quarter when other employees were included in the payment by mutual consent), said bonus was computed as follows: the operating expenses of the grocery department were deducted from the gross profits, the defendant received 6 per cent on the amount he had invested in the merchandise on the shelves and the balance was equally divided between plaintiff and defendant. From its inception, the Market Spot owned shares in and bought merchandise through one or more cooperative grocery organizations and received so-called patronage dividends therefrom. Prior to the third quarter of 1944, these patronage dividends were not included in determining the profits of the grocery department. Likewise, prior to the third quarter of 1944, the basic salary paid to plaintiff was considered an operating expense and was deducted in figuring net profits, but the bonus payments made to plaintiff were

neither so considered nor deducted. Beginning with the third quarter of 1944, defendant changed his bookkeeping system and the method of computing the net profits to be divided was thereby altered as follows: (1) The bonus paid to plaintiff was included with the basic salary as an operating expense and was deducted before a division of profits was made; (2) patronage dividends were included in the receipts and were figured in the bonus payments.

On November 1, 1944, when he received a check covering his bonus for the third quarter of 1944, for the months of July, August and September, plaintiff objected to the addition of his share of net profits to operating expense, and stated to defendant: ". . . bonuses should not be included in net profit. . . . It was not our agreement. I was supposed to receive 50 per cent of the net profit." To this defendant replied: "That is the right bookkeeping way and it is going to be that way, regardless."

Plaintiff also protested the inclusion in operating expenses of Weber Showcase Company's charge of $900 for labor in remodeling the grocery department.

At the time of his final payment and discharge, when he was entering the United States Navy in July of 1945, plaintiff demanded through his attorney that defendant account to and pay him the balance due, including the patronage dividends which had accrued prior to the year 1944.

Defendant testified that he would not have continued plaintiff in his employ had the latter not accepted the changed method of computing the bonus.

The trial court gave judgment for plaintiff in the sum of $3,137.19, computed as follows: $1,573.69 for one-half of patronage dividends from wholesalers accruing prior to the year 1944; $1,113.50 for one-half of bonuses charged as operating expenses after the third quarter of 1944; and $450, being one-half of the $900 bill paid to Weber Showcase Company for labor on remodeling found by the court to be "permanent."

Defendant prosecutes this appeal from such judgment.

It is here urged that the trial court erred in giving judgment for patronage dividends accruing prior to June 1, 1944, for the reason that (1) this relief was not embraced within the pleadings and is contrary to the allegations of the complaint which were expressly admitted by the answer; (2) this relief is based upon findings which are not supported by the

evidence. In this connection, appellant directs attention to paragraph III of the complaint and paragraph II of the answer, to wit:

"III . . . that the defendant paid said plaintiff the said salary and said bonus of fifty per cent of the net profits derived from the operation and maintenance of said grocery department until about June, 1944, *from and after which time* the defendant withheld one-half of the bonus due to plaintiff and failed and refused to account to the plaintiff for certain other profits received from the operation and maintenance of said grocery department, and particularly refunds and dividends from certain wholesalers from which the defendant purchased certain supplies."

"II . . . admits that defendant paid plaintiff said salary and the bonus from the net profits derived from the operation and maintenance of said grocery department until about June, 1944, to wit, at all times to and including the first two quarters of 1944; denies generally and specifically each and every other allegation in said paragraph contained, and on that behalf alleges that beginning with the third quarter of 1944, the method of computing bonus was changed by the defendant with the full knowledge of the plaintiff, who thereupon accepted such changed method of computation and the bonus as computed thereunder."

This court is bound by the rule announced in section 452 of the Code of Civil Procedure, to wit: "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." See, also, *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364, 373 [108 P.2d 960], where it was stated: "Appellants not having filed either a general or a special demurrer . . . we are compelled to construe respondent's pleading liberally and to indulge in every reasonable intendment in its favor."

It is undisputed that under the new system of bookkeeping installed by appellant at the beginning of the third quarter of 1944, patronage dividends were included in the receipts and were figured in the bonus payments for that period and subsequent periods, consequently any recovery on account of such dividends would necessarily be for a period prior to the third quarter of 1944.

With these facts in mind, a reasonable construction of paragraph III of the complaint would be that in addition to withholding one-half of the bonus due to respondent from and

after June, 1944, appellant also failed and refused to account to plaintiff for certain other profits, particularly refunds and dividends from wholesalers.

While it is true, as heretofore recited, that paragraph II of the answer admits payment of the salary and bonus from net profits to and including the first two quarters of 1944, it denies each and every other allegation in said paragraph contained, thus raising an issue with respect to an accounting of such other profits, particularly patronage dividends which had been received during the period of employment.

Appellant was called as a witness by respondent under section 2055 of the Code of Civil Procedure and testified without objection that the approximate amount of the patronage dividends up to 1944 was $3,750; ''I think that was somewhere near the amount that was in there, which that amount also included the amount of deposit that I made on the original opening with them.'' Said witness also testified that from 1939 to and including November 30, 1943, respondent had not been given credit for any of these dividends; that his (appellant's) calculation made as represented by the check dated November 1, 1944, included all of the credits given for the first three quarters of 1944, that is up to November 1, 1944, on patronage dividends.

The record discloses that the issues were understood and that abundant evidence was offered and received showing the amount of patronage dividends, both before and after the date of June, 1944, without objection on the part of appellant. Therefore, the variance, if any, was not material and appellant was not misled thereby, to his prejudice.

Adverting to appellant's contention that the relief granted is based upon findings which are not supported by the evidence, to wit:

''3. That the net profits from the operation of said grocery department, were divided fifty per cent (50%) to each up until the quarter beginning June 1st, 1944, insofar as the knowledge of the plaintiff was concerned, but due to lack of knowledge on the part of plaintiff, the amounts of the patronage dividends credited to defendant were not included therein. That from and after June 1st, 1944, the defendant, without the consent of the plaintiff, changed the original contract so that the division of the net profits between plaintiff and defendant, became twenty-five per cent (25%) to the plaintiff and seventy-five per cent (75%) to the defendant, and withheld from the plaintiff the sum of

$1,113.50, to which plaintiff was legally entitled, until his final discharge by the defendant on or about March 10th, 1945; that prior to November 1st, 1944, plaintiff was advised of the changes in defendant's bookkeeping system and the resultant changes in methods of computing his compensation, but at no time did plaintiff accept or agree to such changes."

Appellant testified that when respondent first came to work for him he was told that "I would take the patronage dividends for my supervision." In answer to the question, "Did you change the method of the credit for the patronage dividends at any time during the period that Murray was working for you or, in other words, did you ever share any of them with him during the time of his employment?" appellant stated: "They were added in for the entire year 1944 for the third quarter bonus."

Respondent testified that the first time he knew any dividends had been received from Spartan (one of the wholesalers) was November 1, 1944. Conflicting statements were made by appellant as to when respondent had knowledge with respect to receipt of dividends from the wholesalers. The trial court summarized the testimony presented on this issue as follows: "Briefly summarizing, Gibbons said he never heard of them until November, that is, he never knew the amounts of them. He knew they were there but he had no knowledge of what amounts he would receive until November. That is in dispute so far as Brewster is concerned."

In view of the conflict in the evidence, the findings of the trial court based thereon are conclusive on appeal, and all reasonable inferences are to be indulged in support thereof.

█ It is next contended that the court erred in giving judgment for $1,113.50, based upon one-half of the bonuses charged as operating expense after the second quarter of 1944, for the reason that "by appearing to acquiesce in the changed method of compensation and accepting without further protest three checks figured in that manner, plaintiff induced defendant to retain him in his employment. He is therefore estopped from now saying that he did not accede to the changed method of compensation and did not accept those checks in full payment for his services."

In summing up the evidence the trial court commented as follows: "Now, on that relationship to the bonus, it has been argued here, 'I made the change because of the bookkeeping', 'I had to set it up in bookkeeping.' It occurs to me that if

the agreement was 50 per cent of the net profits that you cannot change a basic agreement of employment on the basis of keeping books for the store. It may be all right to change the way of figuring it in, but it changes the basis of the agreement which was protested at the time. It may be properly charged against operating expenses as far as his (appellant's) accounting to his income tax or what not, but as to changing the basic agreement I think it is an error. He could not change the agreement and understanding of employment as to what he was to receive, when he was to receive 50 per cent of the net profit, by setting up the books. I do not think that affects it at all. He deducted it. Then it becomes a question of whether there is a new agreement, whether there is an accord and satisfaction, or whether or not there is a modification or alteration of the original amount. I do not think there was an alteration or modification because I do not think there was a meeting of the minds. I do not think that Gibbons agreed to it at all.''

An interpretation of the changed agreement here involved which would deprive respondent of 50 per cent of his former compensation would certainly be unfair and unjust, unless respondent had actually and unequivocally accepted its terms. When advised of the change, respondent protested, but was told by appellant that it was ''going to be that way, regardless.'' The evidence produced points to the fact that there was never a meeting of the minds of the parties, hence respondent by accepting checks for the remaining several months of his employment without further protest, was not estopped from standing upon his original agreement with appellant.

■ The court found that respondent was entitled to a refund of one-half of $900, being a portion of a bill paid to Weber Showcase Company for permanent repairs made on the Market Spot. The record discloses that the total amount of the bill for this work was $1,300. Appellant testified that $900 thereof was a charge for labor, and $400 was for material; also that the work was in the nature of a temporary improvement. Respondent objected to the addition of the $900 charge to operating expenses, maintaining that the improvement was permanent and constituted a capital investment. In view of the conflict in the evidence on this point, the finding of the trial court is conclusive on appeal.

■ Appellant urges in his assignment of general errors that each of the accountings for the third and fourth quar-

ters of 1944, and the first quarter of 1945, constituted an account stated, and the acceptance of each check therefor constituted both payment of an account stated and an accord and satisfaction. As stated in *Moore* v. *Bartholomae Corp.*, 69 Cal.App.2d 474, 478 [159 P.2d 436], "The elements of an accord are: (1) a proper subject matter; (2) competent parties; (3) consent or meeting of the minds of the parties; and (4) consideration. (*Sierra etc. P. Co.* v. *Universal Electric etc. Co.*, 197 Cal. 376, 387 [241 P. 76].)"

The record is clear that respondent protested the new method of computation upon receipt of his first check, and that at no time did he consent to such change, hence an essential element of an accord is lacking, to wit: the meeting of the minds of the parties, as the trial court found.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied December 16, 1947.