**PACIFIC MAGNESIUM, Inc. v. WEST-OVER.**

No. 8685.

United States District Court
S. D. California, C. D.

Oct. 18, 1949.

Frank P. Doherty, Melvin D. Wilson, Los Angeles, Cal., for the plaintiff.

James M. Carter, United States Attorney, E. H. Mitchell and Edward R. McHale, Assistant U. S. Attorneys, Eugene Harpole, Robert D. Scott and James B. Pettus, Special Attorneys, Bureau of Internal Revenue, all of Los Angeles, Cal., for the defendant.

YANKWICH, District Judge.

Prior to November 20, 1944, P. H. Sheedy was sole stockholder of Pacific Magnesium, Inc., the plaintiff, then known as Socal Magnesium, Inc., under certificates issued to him in his own name, as trustee and to another corporation of which he was the sole stockholder. He was also the sole stockholder, either in his own name or as beneficiary under a trust, of Socal Foundry, to be referred to as Socal. Throughout the year 1944, Sheedy was president and director of both corporations. Frank Gaines had, prior to June, 1944, been an officer, director and general manager of both corporations. On November 20, 1944, he was not an officer or director of either. On that day, an agreement was entered into by Sheedy and Gaines, by which Sheedy sold to Gaines a $14,000.00 note of Socal, held by Sheedy, and all the Socal shares. Gaines paid $56,000.00 in cash and promised to cause Socal to accept $4,000.00 in settlement of a debt of $39,335.07 owed to Socal by the plaintiff.

The Preamble of the Agreement contained the following reference to this obligation:

"Whereas, Socal Foundry claims that Socal Magnesium, Inc. is indebted to it in the approximate amount of Thirty-nine Thousand, Three Hundred Thirty-five and 07/100th Dollars ($39,335.07), not including the amount due Socal Foundry for Socal Magnesium, Inc., herein referred to as the Permanent Mold Account in the

approximate sum of Six Thousand Six Hundred Ninety and 48/100ths Dollars ($6690.48) and not including the amount due Socal Foundry by Socal Magnesium, Inc., known as Inventory of Metal Account, in the approximate amount of Nine Hundred Four and 40/100ths Dollars ($904.40)" ·

After reciting the reciprocal undertakings of the parties, the Agreement contained this promise by Gaines as to the claim:

"(d) To cause Socal Foundry to compromise and settle its claim against Socal Magnesium, Inc. in the aforesaid amount of Thirty-nine Thousand Three Hundred Thirty-five and 07/100ths Dollars ($39,335.07) by payment by Socal Magnesium, Inc. to Socal Foundry for the sum of Four Thousand Dollars ($4,000) and Mr. Gaines personally agrees that he will save and hold Mr. Sheedy and Socal Magnesium, Inc., its officers, stockholders and directors wholly and completely harmless from any and all liability, claims or demands of whatever nature arising from or which may accrue to or be asserted against Socal Magnesium, Inc. by reason of said compromise and settlement of said claim;"

To carry into effect the Agreement, Gaines and his nominees were, on the same day, elected directors and officers of Socal in the place of Sheedy and his nominees.

To carry into effect the promises in the Agreement relating to the liquidation of the debt, the following Resolution was adopted by the new directorate:

"Whereas Socal Magnesium Inc., a California corporation, is indebted to this corporation in the approximate sum of $39,335.07, not including the amount due by said Socal Magnesium Inc. to this corporation on its Permanent Mold Account or Inventory of Metal Account, and "Whereas it is the belief of the directors of this corporation that said Socal Magnesium Inc. is unable to pay its said debt and that if this corporation can obtain the sum of $4000.00 from said Socal Magnesium Inc. in settlement of said debt, that it would be a wise and proper thing to do.

"Now Therefore, Be It Resolved that this corporation accept from Socal Magnesium Inc. the sum of $4000.00 as payment in full of all monies and other things of value that may be due and owing to this corporation from Socal Magnesium Inc., except that this does not pertain to the account known as Permanent Mold Account and the account known as Inventory of Metal Account now owing to this corporation as aforesaid. "Resolved Further that the President and Secretary of this corporation be and they are hereby authorized and directed to execute a General Release in the name of and for and on behalf of this corporation, and to affix the corporate seal thereto, releasing said Socal Magnesium Inc. from the payment of any monies owing to this corporation, except as aforesaid, in consideration of the payment of $4000.00 by Socal Magnesium Inc. to this corporation."

The balance sheet of the plaintiff as of October 13, 1943, listed the debt owed to Socal in full as a liability. Its balance sheet of December 31, 1949, showed a cancellation of the debt. The result was achieved in this manner. The plaintiff paid Socal $4000.00 in cash, credited capital surplus with $35,335.07, and debited a similar amount to "accounts payable Socal Foundry". In this manner, the plaintiff's excess of assets over liabilities, exclusive of the capital stock, showed an increase of $35,335.07. Plaintiff had a clear net worth both before and after the transaction, and on December 31, 1944, showed an earned surplus of $7,789.99. Socal deducted on its 1944 return a loss of $35,335.07 on account of the cancellation of the debt, which the Commissioner allowed as a loss. However, because of other deductions, it derived no tax benefit from this allowance. In its income and excess profit tax return, for the year, plaintiff claimed a deduction in the amount of $35,335.07. The Commissioner disallowed this, and on October 15, 1947, he proposed a deficiency of $36,353.39 in excess profits tax for the calendar year 1944, claimed to be due from the plaintiff. The plaintiff paid the deficiency, with interest from March 15, 1945, amounting to $5816.38.

A timely claim for refund, filed on March 12, 1948, in the amount of $30,487.39, with interest in the amount of $4877.98, was denied.

By this action, the plaintiff seeks to recover the amount of such claim under Internal Revenue Code, Sec. 3772.[1]

### I The Corporate Entity Cannot Be Disregarded

We have to determine whether, as found by the Commissioner, the transaction resulted in taxable income under Section 22 of the Internal Revenue Code[2] or whether, as claimed by the plaintiff, the cancellation of its debt by Socal was a gift or capital contribution to the plaintiff by its sole stockholder.[3]

We advert to the fact that the Agreement, upon which the transaction is bottomed, was not entered into by either corporation. It was an agreement between Sheedy and Gaines relating to the sale and acquisition of the Socal stock which Sheedy controlled in his individual capacity or as trustee. Neither corporation, as an entity, had any stock in the other. More particularly, *the plaintiff did not own any of the Socal stock which was sold to Gaines.* The debt, which was adjusted, was not Sheedy's, but the plaintiff's. Socal *and not Sheedy* cancelled the debt, and the benefit accrued to plaintiff *and not to Sheedy.*

These facts are of prime importance, because the entire argument of the plaintiff seems to be predicated upon the proposition that, as Sheedy owned and controlled both corporations, there was a fusion between the individual and the corporations, the corporations, as the cases say, "were shams", the distinction between them and Sheedy should be entirely obliterated and disregarded, and whatever the corporations did, should be attributed to Sheedy, who controlled them, and vice versa. On this assumption, the plaintiff insists that the transaction amounted to "a transfer of money from one pocket of Mr. Sheedy to another".

The difficulty with the argument is that a corporation and its stockholders are distinct entities. And the taxpayer who has chosen to use the corporate form for business purposes is not free to disregard it, in order to receive the tax benefit to which he might have been entitled as an individual. The reason is obvious. Having clothed himself in corporate garb, he cannot shed the cloak at will, in order to claim tax benefits to which he is not entitled in his corporate capacity. Otherwise put, a person who has chosen whatever benefit comes from the corporate form, must be ready to accept both the tax advantages and disadvantages which flow from it.[4] In extraordinary circumstances, the corporate entity may be disregarded, especially when the corporation has no life of its own and is merely a limited instrument to achieve a single, definite object. But this will not be done in the or-

---

1. 26 U.S.C.A. § 3772.

2. 26 U.S.C.A. § 22(a).

3. 26 U.S.C.A. § 22(b) (3). Regulation 111, Sec. 29.22(2)-13.

4. Klein v. Board of Tax Supervisors, 1930, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679; New Colonial Co. v. Helvering, 1934, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348; Burnet v. Commonwealth Improvement Co., 1932, 287 U.S. 415, 419–420, 53 S.Ct. 198, 77 L.Ed. 399; see, National Carbide Corp. v. Commissioner, 1949, 336 U.S. 422, 428–429, 69 S.Ct. 726.

"A taxpayer is free to adopt such organization for his affairs as he may choose and having elected to do some business as a corporation, he must accept the tax disadvantages.

"On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property." Higgins v. Smith, 1940, 308 U.S. 473, 477–478, 60 S.Ct. 355, 358, 84 L.Ed. 406.

dinary circumstances, where the corporation has a distinct being, in order to give to it a tax benefit from a transaction in which *it did not participate* in its corporate capacity. And this is especially true when, *as here;* and regardless of sole ownership of its stock, the business actually had been carried on under the corporate form. As said by the Supreme Court:

"The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity."[5]

The distinction between Sheedy, the individual and controlling stockholder of the two corporations, and the corporate entities, is evident in the very contract from which the controversy stems. Change of liabilities was to follow the transfer of stock in Socal. After their assumption by the new directorate, there is, in the contract between Sheedy and Gaines, a distinct undertaking to save harmless not only Sheedy as an individual, *but the plaintiff as well,* "from any and all liability, claims or demands of whatsoever nature" which might arise from the various transfers including those "by reason of said compromise and settlement of said claim". And, at the very time when Sheedy was selling his stock, he held a $14,000.00 promissory note of Socal's, payable to him. The Preamble to the contract recited that Socal was indebted to Sheedy in that sum, as evidenced by a promissory note dated March 3, 1944. By the Agreement, the note was transferred to Gaines, without recourse, its value was made a part of the consideration for the purchase of the stock, and Sheedy acknowledged *receipt* of its face value.

Can the transaction be considered a gift or a capital contribution?

### II Gift or Contribution?

It is of the essence of any gift that there be no consideration.[6] And this principle applies to gifts by its stockholders to a corporation, whether they consist of the forgiveness of a debt or outright donations of things of value. If the problem of gifts between a stockholder and a corporation presents difficulties, they arise from the complexity of modern business methods and the variety of relationships into which stockholders and corporations may enter. But, whether the stockholder cancel a note or forgive a debt for services rendered or goods sold to the corporation, there must be *a definite* and gratuitous forgiveness by the *stockholder* of a *definite* debt which is owed to him by the corporation.[7] Where there is a reduction of a

---

5. Moline Properties v. Commissioner, 1943, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1134, 87 L.Ed. 499.
   "The decisive question is whether the corporations were created to, or did, in fact, serve a recognizable business purpose." O'Neill v. Commissioner, 2 Cir., 1948, 170 F.2d 596, 598.
   "If the corporate device is used for business advantages, there is no just ground for protests when it results in tax liability." Railway Express Agency v. Commissioner, 2 Cir., 1948, 169 F.2d 193, 196.
   And see, Rogan v. Starr Piano Co., 9 Cir., 1943, 139 F.2d 671, 674.

6. Roberts v. Commissioner, 9 Cir., 1949, 176 F.2d 221, 223.

7. 1 Mertens, Law of Federal Income Taxation, 1942, Secs. 5.13–5.14; 2 Mertens, op. cit., Secs. 11.19–11.21; Douglas v. Willcuts, 1935, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. American Dental Co., 1943, 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785; American Cigar Co. v. Commissioner, 2 Cir., 1933, 66 F.2d 425; Commissioner of Internal Revenue v. Auto Strop Safety Razor Company, 2 Cir., 1934, 74 F.2d 226; Gibson v. Commissioner, 3 Cir., 1936, 83 F.2d 869; Carroll-McCreary Co. v. Commissioner, 2 Cir., 1941, 124 F.2d 303; Chenango Textile Corp. v. Commissioner, 2 Cir., 1945, 148 F.2d 296; George Hall Corp. v. Shaughnessy, D.C.N.Y.1946, 67 F.Supp. 746. But even a stockholder's promise not to collect on a note may be taxable if the amount of the note is transferred to the capital of the corporation and made available

claim or its liquidation in an amount less than its face value, this principle does not apply. For, whether the adjustment be made through repurchase of an outstanding obligation for less than it cost or obligated the corporation or the satisfaction of an indebtedness for less than its value, we have the compromise of a claim and the gain resulting from it is income.[8]

### III The Gain Was Taxable As Income

If the facts in the case be gauged by the principles just stated, it is abundantly clear that the transaction under consideration cannot be considered either a gift under Section 22(b) (3) of the Internal Revenue Code[9] or a capital contribution made gratuitously by a stockholder under the regulations.[10] As already appears, Socal *was not* a stockholder of the plaintiff. If any cancellation there was, it was by Socal and not by Sheedy. In truth, what we have here is not a gift or a gratuitous forgiveness, but the settlement of a claim for a less amount. The Agreement which preceded the actual cancellation and the entries made in the books and corporate records of the two corporations speak of the debt from the plaintiff to Socal not as *a definite obligation,* but *as the assertion of a claim.* This indicates that the amount was not certain, that it was a matter of dispute between the two corporations. Gaines undertook to cause Socal to "compromise and settle" its claim against the plaintiff by the payment of $4000.00. As already appears, Gaines agreed to save not only Sheedy, but the plaintiff and its officers, stockholders and directors harmless from any and all liability, claims and demands which might arise or be asserted against it "by reason of said compromise and settlement of said claim". Both under general law and the law of California, the situation shows the assertion of a claim by Socal, which is disputed by the plaintiff, and a compromise of it,—a good illustration of an accord and satisfaction.[11] The actions of both corporations which followed the execution of the contract fit into the idea of compromise of a claim. Plaintiff cannot disclaim for itself or Sheedy what Socal did after the Agreement was entered into, for the subsequent acts were necessary in order to protect the plaintiff and Sheedy and to give effect to the undertaking made by Gaines. The recital in Socal's Resolution accepting the four thousand dollars in payment of the debt and authorizing its President and Secretary to execute a general release merely carried out the mutual promises of Sheedy and Gaines, without which the Agreement would not have been made. The subsequent act of Socal in reporting this amount as a loss, which was allowed by the Commissioner, also fits into this pattern. They all spell clearly the compromise of a debt by the acceptance of a smaller sum.

In all cases of this character, the contemporaneous acts of the parties per-

for distribution to stockholders. Schweppe v. Commissioner, 9 Cir., 1948, 168 F.2d 284.

8. Mertens, op. cit., Secs. 11.20–11.21; United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131; Commissioner of Internal Revenue v. Jacobson, 1939, 336 U.S. 28, 69 S.Ct. 358; Central Paper Co. v. Commissioner, 6 Cir., 1946, 158 F.2d 131; Commissioner of Internal Revenue v. Pittsburgh & West Virginia R. Co., 3 Cir., 1949, 172 F.2d 1010. The reasoning of these cases finds support in Walker v. Commissioner, 5 Cir., 1937, 88 F.2d 170; Helvering v. Jane Holding Co., 8 Cir., 1940, 109 F.2d 933, 940–941; Walsh Holyoke Steam Boiler Works v. Commissioner, 1 Cir., 1947, 160 F.2d 185, 189.

9. 26 U.S.C.A. § 22(b) (3).

10. Regulation 111, Sec. 29.22(a)-13.

11. 1 Am.Jur., Accord and Satisfaction, Secs. 1, 2, 13; 1 C.J.S., Accord and Satisfaction, §§ 1, 6; Restatement, Contracts, Sec. 418; Fleming v. Post, 2 Cir., 1944, 146 F.2d 441, 443, 158 A.L.R. 1384; California Civil Code, Secs. 1521, 1523; Sierra & San Francisco Power Co. v. Universal Electric & Gas Co., 1925, 197 Cal. 376, 386–387, 241 P. 76; Hurley v. Kazantzis, 1947, 82 Cal. App.2d 378, 381, 186 P.2d 434; Gibbons v. Brewster, 1947, 82 Cal.App.2d 435, 441–442, 186 P.2d 459. The Agreement having been fully executed, it was irrevocable, even if it had not been in writing. See, Julian v. Gold, 1931, 214 Cal. 74, 3 P.2d 1009; Stoltenberg v. Harveston, 1934, 1 Cal.2d 264, 266, 34 P.2d 472.

formed at the time when the effect of the transaction *on tax liability* was not uppermost in their minds should prevail over subsequent attempts to give to it a different interpretation.[12]  If, as plaintiff contends,

the effect of the transaction is as though the $35,335.07 had been added to the price demanded by Sheedy for the transfer of the stock, and, after receiving it, Sheedy had donated it to the plaintiff, the answer is that the transaction *was not* handled in that manner.  And neither Sheedy nor Gaines, *contemporaneously,* treated it as such.  But even if we assume that this was the intention, their actions evidence a contrary intention.  And, as between the two, in a matter of this character, acts speak more eloquently to a court.

It follows that the Commissioner was right in his determination.  Judgment will, therefore, be for the Defendant that the plaintiff take nothing by the Complaint.

12.  Cf. Grace Bros. v. Commissioner, 1949, 9 Cir., 173 F.2d 170.