## ST. CLAIR v. UNITED STATES.
### No. 9711.

United States District Court
S. D. California, Central Division.
May 15, 1950.

Dempsey, Thayer, Deibert & Kumler, Los Angeles, Cal., for plaintiff.

James M. Carter, U. S. Atty., E. H. Mitchell, Edward R. McHale, Asst. U. S. Attys., Los Angeles, Cal., Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the defendant that plaintiff take nothing by the complaint. Costs to the defendant.

#### Comment

I am of the view that the Commissioner of Internal Revenue correctly interpreted St. Clair Estate Company in 1939 and 1940 as dividends taxable at ordinary rates, and not as partial distributions in liquidation.

The question is purely one of fact, to be determined from an examination of the un-the payments made to the plaintiff by the disputed record and facts in the case. Whatever conflicting attitudes the Commissioner took before the tax court regarding the nature of these payments, cannot alter the factual situation found to exist.

The important fact is that the resolution of the directors of the corporation dated December 23, 1938 and which proposed a liquidation of the corporation, and the meeting of the shareholders on December 23, 1938 which adopted a plan of liquidation, were stayed in their effect by the institution of proceedings by Cora St. Clair and the injunction issued on December 22, 1938.

The injunction restrained the corporation and directors from "altering, removing, *disposing* of and destroying any of the books, records, books of account, *property or assets* of the St. Clair Corporation." (Emphasis added.)

Pending the determination of this lawsuit, neither the corporation nor *its directors could take any action towards such disposition of the property as a "winding up"* would require. The subsequent institution by the corporation of an action in the same Superior Court seeking the court's assistance in winding up the affairs of the corporation was of no effect as a liquidation. The sister's lawsuit tied up the *corpus* of the estate until the rights of the four members of the family were adjudicated. And the Superior Court in the "dissolution action" (if we may call it such), could not proceed with any pattern of liquidation of the *corpus* of the estate until those rights were determined. At most, it could, and *did allow,* the income to be distributed to the shareholders, in so far as it was not affected by the ultimate outcome of the suit of Cora St. Clair. The only orders of distribution which the Court made were orders distributing *current earnings,* which were designated *as such* in every instance.

Illustrative is the Order of April 28, 1939 (Exhibit E, page 2), which recites that the order sought is an order authorizing and directing the St. Clair Estate Co. to pay to its stockholders the total sum of $24,000 which is to be charged "against said stockholders' accounts on the books of the St. Clair Estate."

On June 4, 1940, payments were ordered made "out of earnings of 1940". Similar phrasing appears in the orders of October 3, 1940 and October 26, 1940. On October 13, 1939, the Court, in the dissolution proceeding, entered an order significantly entitled "Order *Construing* Order of Distribution of April 26, 1939," in which it was stated: "It is hereby ordered that the order of distribution heretofore made herein on the 28th day of April, 1939, is hereby construed to be a distribution and payment of the sum of Twenty-four Thousand Dollars ($24,000.00), Six Thousand Dollars ($6,000.00) to each stockholder, *from the income of St. Clair Estate Company, rather than from its capital assets.*" Following this interpretative order, the order of December 26, 1939, uses this language: "That the Board of Directors of St. Clair Estate Company and said St. Clair Estate Company be and they are hereby authorized and directed to *declare* and pay to the stockholders of St. Clair Estate Company as dividends, in the calendar year 1939, *amounts up to the net earnings of said corporation* for the year 1939 and any temporary restraining order or *injunction prohibiting such action may be accordingly modified to permit such action.*"

At these various hearings, the value of the assets of the corporation was stated at around a quarter million dollars and the Minutes so recited. (Exhibit E, page 1) It may be conceded that the name given to a payment is not conclusive. But here we have the same court in which the two proceedings are pending proceeding to make payments in a "winding-up" proceeding, knowing full well that the *corpus* of the estate cannot be distributed until the suit of one of the four members of the family is decided by final judgment,—a suit in which the corporation which seeks to have its affairs wound up has been enjoined from disposing of the *corpus* of the estate. And the Court recognized the binding effect of the injunction by modifying it to the extent of permitting the payment of profits only. Rightly. For, under the circumstances, the Court was required not only by its own injunctive order, but by the dictates of ordinary judicial prudence, to see that the *corpus* of the estate was not touched. So that, whatever distribution was made was of moneys earned by the estate. And only after the litigation among the four stockholders was finally settled would the Court determine and approve the manner of liquidation and order it carried into effect.

At times, of course, if the money distributed actually bears a significant relation to the body of the estate, an intention to make a distribution *chemin faisant* (as they go along), as the French say, might be inferred. This is what the courts call "a step in the process of complete litigation." Cf. Letts v. Commissioner, 9 Cir., 1936, 84 F.2d 760; Florence M. Quinn, 1937, 35 B.T.A. 412. But the few thousand dollars distributed here were so insignificant when compared with the value of the estate, and were so plainly earmarked as derived from and limited to the *current profits,* that a conclusion that they were intended as a partial liquidation would be unrealistic. See, Mertens, Law of Federal Income Taxation, Sec. 9.83; Tootle v. Commissioner, 8 Cir., 1932, 58 F.2d 576; Holmby Corp. v. Commissioner, 9 Cir., 1936, 83 F.2d 548; Jones v. Dawson, 10 Cir., 1945, 148 F.2d 87. We would be giving effect as fact to what may be clearly an afterthought to obtain an advantage which was not thought of at the time. In all tax matters, the acts of the parties at the time when their possible effect upon taxability *was not* uppermost in their minds speak more eloquently than subsequent attempts to place their action in a different light in order to achieve a specific tax result. See, Pacific Magnesium, Inc., v. Westover, D.C.Cal.1949, 86 F.Supp. 644, 649.

It follows that the Commissioner was right in his determination.

Hence the ruling above made.